NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAFIEEK GRAHAM and THADDEUS THOMAS,<br><br>Plaintiffs,<br><br>v.<br><br>JACQUELYN OTTINO, et al.,<br><br>Defendants. | Civil Action No. 11-7125 (SRC)<br><br>OPINION |

**CHESLER**, District Judge

This matter comes before the Court on Defendants' motion for summary judgment. Plaintiffs, appearing pro se, have opposed the motion. The Court has considered the papers filed by the parties and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant the motion for summary judgment.

**I.   BACKGROUND**

**A.  Facts**

This civil rights action arises out of a physical altercation involving Plaintiffs Rafieek Graham and Thaddeus Thomas, who are and were at all relevant times, civilly confined at East Jersey State Prison's Special Treatment Unit ("EJSP-STU") in Avenel, New Jersey pursuant to the New Jersey Sexually Violent Predators Act. The Defendants named in the lawsuit are as follows: Jacquelyn Ottino, Program Coordinator at the EJSP-STU; Shantay Adams, Unit

1

Director of the STU Main; and Stephen Cerone, Tommy Nacca and Jorge Castro, all of whom were at the relevant time employed as Senior Corrections Officers ("SCOs") with the New Jersey Department of Corrections ("NJDOC").

On November 14, 2011, Graham and Thomas were in the EJSP-STU's yard when they were approached by another civilly committed STU resident, Anthony Hardin. Apparently, Hardin startled Graham and Thomas, by slapping the table on which Graham and Thomas were resting. Hardin made remarks that Graham and Thomas understood to be threats. Plaintiffs both testified at their depositions that Hardin then walked away but returned to the table and made additional remarks. It is undisputed that, at that time, Graham and Thomas assaulted Hardin, initially striking him in the head and then repeatedly hitting him. According to the NJDOC investigation report prepared in connection with this incident, two SCOs, Sgt. Frattalone and Defendant Nacca, observed Plaintiffs attack Hardin and throw him down to the table, at which time Sgt. Frattalone ordered them to stop fighting. Despite Sgt. Frattalone's order, Graham and Thomas continued to hit Hardin. Sgt. Frattalone radioed an emergency code for assistance. According to the incident report he prepared, Sgt. Frattalone repeated the order to stop fighting but Graham and Thomas refused. At this point, according to the reports in the record, Hardin was lying curled up on the table. Various officers responded at the yard gate, and SCO Nacca opened the gate to let them in. Three of the responding officers, who are not named as defendants in this action, restrained Thomas. According to Defendants, Thomas resisted, but one of the officers, Sgt. Ilg, was able to handcuff him. Two other officers, SCO Elijah (who is also not named as a defendant) and SCO Nacca restrained Graham, who according to the officers, also resisted. At some point in this struggle, Graham was brought down to the ground. Sgt. Ilg

ultimately handcuffed Graham.  Hardin was also restrained and placed in handcuffs, and all three were separately escorted to the medical department for examination.

Thomas was examined by Registered Nurse Gehring.  At the time, Thomas did not report being injured, and no injuries were observed by medical staff.  Later, at the time of his deposition, Thomas stated that he had sustained scrapes to the side of his face and felt pain in his left shoulder.  Nurse Gehring also examined Graham after the fight.  Her notes state that Graham had a "small abrasion to his forehead" and another under his right eye.  Nurse Gehring further noted that Graham complained of pain in both wrists but that her inspection revealed "no evidence of injury to either wrist."  Hardin sustained visible swelling in the area of his forehead and underneath his right eye but denied other injuries. After treatment, all three EJSP-STU residents were cleared for return to housing.

The record also contains evidence that various officers involved in breaking up the altercation were injured.  In particular, Defendant Nacca sustained an abrasion to his right knee.  Two of the officers who restrained Thomas—SCOs Miterko and Higgins—sustained lip bruising and knee injury, respectively.  Higgins, in particular, had to seek further, outside treatment upon the recommendation of the EJSP medical staff and was not cleared to return to work for several days.

Based on the foregoing facts, Plaintiffs have asserted a claim under 42 U.S.C. § 1983 against Defendants Cerone, Nacca and Castro for using excessive force in restraining them, in violation of the Fourteenth Amendment.

The November 14, 2011 incident also gives rise to Plaintiffs' § 1983 claim for failure to protect in violation of the Fourteenth Amendment. The claim is asserted against Defendants Ottino and Adams.  The facts relevant to this claim are as follows:

Thomas, Graham and Hardin have been residents of the EJSP-STU since 2010. Thomas has known Hardin since 2010. He testified that Hardin has threatened him every day since Hardin's arrival at the EJSP-STU in 2010. He also stated in his deposition that he documented each of these incidents. Thomas, however, admitted that he did not report these incidents to Ottino or Adams.

Graham and Hardin have known each other since 2005. Graham concedes that in the time he has known Hardin, Hardin threatened him only once, in 2010, approximately one week after Hardin arrived at the EJSP-STU. According to Graham's deposition testimony, Hardin told Graham during a process group session that he would "f Graham up." (Graham Tr. at 30-31.) Graham further testified that in response, he also threatened Hardin during that group session, stating that he "was gonna fuck him up." (Id. at 32, 57.) Graham has stated that, in November 2010, he prepared a grievance, addressed to Defendant Ottino, regarding Hardin and the exchange of threats that took place during the group process session. He also states that in December 2010 he directed a grievance to Defendant Adams in which he asked to be kept separate from Hardin but admits this grievance did not complain that Hardin had been threatening him. Graham confirmed at this deposition that, prior to the November 14, 2011 incident in the EJSP-STU yard, he did not believe Hardin posed a threat and was not scared of him.

**B. Procedural History**

Graham and Thomas initiated this lawsuit by submitting a complaint for filing *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). After it was screened pursuant to § 1915, the Complaint was filed on October 9, 2012, and various claims other than the excessive force and failure to protect claims were dismissed without prejudice. (Many of the claims were dismissed

as duplicative of other civil actions Plaintiffs had filed and were pursuing before this Court.) Throughout the litigation, Plaintiffs filed several requests for appointment of *pro bono* counsel, which were denied after consideration by the Court under the applicable standard.

Defendants filed the instant motion for summary judgment on August 1, 2014. Although Plaintiffs had failed to oppose the motion by the original deadline, the Court, of its own volition, extended the time for opposition to be filed to September 30, 2014. Plaintiffs then jointly submitted a letter, dated September 9, 2014, which consisted of a repeated request for the Court to assign them an attorney. This request was once again denied.

The motion for summary judgment, however, remained unopposed substantively. As such, in the interest of justice, the Court issued an Order dated December 10, 2014 granting Plaintiffs an additional opportunity to oppose the motion on or before January 12, 2015. Thomas and Graham jointly submitted a five-page letter brief, unaccompanied by a counter-statement of material facts or any affidavits or documentation in support of their opposition to this motion for summary judgment.

## II.  DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (construing the similarly worded Rule 56(c), predecessor to the current summary judgment standard set forth in Rule 56(a)). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the

substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). It may not make credibility determinations or engage in any weighing of the evidence. Anderson, 477 U.S. at 255.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish the existence of a genuine issue as to a material fact. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir.1985). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir.2001), overruled on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs, ––– U.S. ––––, 134 S.Ct. 773 (2014). However, the party opposing the motion for summary judgment cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir.1990) (holding that "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment").

6

### B. Excessive Force Claim

Plaintiffs assert a § 1983 claim against Defendants Cerone, Castro and Nacca on the grounds that these officers used excessive force to break up the altercation of November 14, 2011 and to restrain Plaintiffs in connection with that incident. Section 1983 creates a private cause of action for a constitutional violation committed by a person acting under color of state law. That statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or the laws of the United States. See Parratt v. Taylor, 451 U.S. 527, 535 (1981).

As to SCOs Cerone and Castro, Defendants have moved for summary judgment on the excessive force claim on the grounds that there is no evidence in the record which would allow a jury to find that these two individuals were personally involved in restraining either Graham or Thomas. To establish liability under § 1983, it is essential that a plaintiff demonstrate a defendant's personal involvement in the alleged civil rights violation. Id. at 537 n. 3; see also Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (holding that "a defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."). Defendants not only note the absence of evidence indicating that SCO Cerone and/or SCO Castro engaged in any of the

7

actions which Plaintiffs contend amounts to excessive force, but they also point to proof in the record which demonstrates that Graham and Thomas were restrained and handcuffed by other officers. Numerous reports prepared separately by the many officers involved in this incident on the same day as the incident demonstrate that Thomas was restrained by SCOs Higgins, Miterko and Ilg (with Ilg ultimately placing Thomas in handcuffs) and that Graham was restrained by SCOs Elijah and Nacca and handcuffed by Ilg. On the record before the Court, there is no genuine issue as to the fact of SCO Cerone's and SCO Castro's lack of involvement in the activity on which the excessive force claim is based. Plaintiffs have failed to adduce any proof to refute Defendants' demonstration that no reasonable jury could find otherwise, and summary judgment in favor of Defendants Cerone and Castro is therefore warranted.

As to SCO Nacca, who clearly did participate in restraining Plaintiff Graham, Defendants raise two arguments in support of summary judgment. One, they argue that the facts fail to establish a *prima facie* claim of the unconstitutional or excessive use of force by Nacca. Two, they argue summary judgment must be granted on the excessive force claim against Nacca because he is entitled to qualified immunity. Because the qualified immunity analysis incorporates the issue of whether there is sufficient evidence to demonstrate that Nacca's use of force was unconstitutional, the Court will address both of Nacca's arguments under the qualified immunity framework.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Supreme Court has held that whether a defendant is entitled to qualified immunity is a question for the court, not the

jury, and should be decided early in the proceedings so that the defendant may avoid the burdens of litigation and thus enjoy the immunity to which he or she is entitled. Saucier v. Katz, 533 U.S. 194, 200-01 (2001). The Saucier court explained that "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct . . . If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." Id. at 205.

A qualified immunity analysis in a § 1983 action involves two prongs. Id. at 201. One, the court must consider whether, taking the facts in the light most favorable to the party asserting the injury, the facts demonstrate that the officer's conduct violated a federal right. Id. Two, the court must determine whether the right was clearly established at the time of the violation. Id. To find that an officer violated a clearly established right, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). If the right was not clearly established, the state actor is entitled to qualified immunity. Saucier, 533 U.S. at 202. Courts have discretion to decide the order in which to engage these two prongs. Pearson, 555 U.S. at 236; see also Werkheiser v. Pocono Twp., 780 F.3d 172, 176 (3d Cir. 2015) (holding that the court may address the Saucier prongs in either order, at its discretion).

Here, the Court begins and ends its qualified immunity analysis with the second prong of the Saucier test. Even assuming that that Nacca's actions in breaking up the prison yard fight and restraining Graham amounted to an unreasonable use of force in violation of Graham's constitutional rights, the Court concludes that Nacca did not violate clearly established law concerning the use of excessive force. The Court reaches this conclusion by examining the contours of the right in the factual context presented by Plaintiffs' action.

9

Because Graham was, at the relevant time, civilly detained rather than incarcerated pursuant to a criminal conviction, his right to be free from excessive force arises under the Fourteenth Amendment's due process clause. See Youngberg v. Romero, 457 U.S. 315-16 (1982) (holding that the right of an involuntarily committed individual to be protected from cruel and unusual punishment and bodily restraint is guaranteed by the Fourteenth Amendment's due process clause); cf. Bell v. Wolfish, 441 U.S. 520, 545 (1979) (holding that pretrial detainees retain at least those constitutional rights enjoyed by convicted prisoners, which include the protection of the due process clause). The Third Circuit has held that the rights of an individual who is detained pretrial, that is, prior to conviction "are at least as great as the Eighth Amendment's protections available to a convicted prisoner." Boring v. Kzakiewicz, 833 F.2d 468, 471 (3d Cir. 1987). As such, it has applied Eighth Amendment principles to the analysis of a pretrial detainee's claim of excessive force. Williams v. Guard Bryant Fields, 535 F. App'x 205, 210 & n. 4 (3d Cir. 2013). This Court will accordingly follow the Third Circuit's guidance and examine Graham's due process claim for excessive force claim by reference to Eighth Amendment jurisprudence.

To establish a claim of excessive force, a plaintiff must demonstrate that he was subjected to "the unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). The Supreme Court has recognized the unique challenges posed in the prison setting, in which an individual's rights must be balanced against "concerns for the safety of prison staff or other inmates." Id. at 320. It has noted that, particularly in the case of a prison disturbance, officers must make decisions concerning the use force "in haste, under pressure, and frequently without the luxury of a second chance." Id. Accordingly, the Supreme Court held in Whitley that where an excessive force claim involves a "prison security measure [that] is

10

undertaken to resolve a disturbance, . . . the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain order or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. at 320-21 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied sub nom. John v. Johnson, 414 U.S. 1033 (1973)).

Applying this standard, the Court concludes that Nacca is entitled to qualified immunity because, even when viewed in the light most favorable to Plaintiffs, the facts show that the force employed by Nacca was not in nature or degree excessive according to the clearly established law at the time. The relevant factors in considering whether an officer's actions constitute excessive force in violation of a plaintiff's constitutional rights are as follows: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." Giles v. Kearney, 571 F.3d 318, 328 (3d Cir. 2009). Tailored to the context of this case, the qualified immunity inquiry turns on whether, under pre-existing law, it would be clear to Nacca that he employed force unrelated to a good faith effort to restore order in the midst of a violent altercation in the prison yard. Here, there is no dispute that Graham and Thomas were repeatedly striking a fellow EJSP-STU resident and refused to stop when ordered by SCO Frattalone. As such, there was clearly a need to apply force to break up the fight. Nacca was one of the two officers who restrained Graham by bringing him down to the ground. The record shows that Graham did not sustain significant or serious injury as a result of this maneuver. According to the record of the medical evaluation conducted immediately after the fight, Graham sustained an abrasion to his

11

forehead and under his right eye. Graham, in his deposition, conceded that the scrape "wasn't that big." The evidence of Graham's minor injuries, together with evidence indicating that Graham resisted restraint by the officers, in particular, the injury to Nacca himself, supports Defendants' position that the force used did not exceed "that which is reasonable and necessary under the circumstances." Id. Moreover, the fight took place in the presence of many other civilly committed individuals, who were also in the EJSP-STU yard and had to be ordered to move to the far end of the yard, away from the altercation. The need to stop the fight and physically restrain Graham is underscored by the threat posed to the responding officers as well as the safety of other residents, in the event the disorder was not contained. In light of the circumstances faced by the corrections officers, there is no indication that it would have been apparent to Nacca that the force he employed was disproportionate to the need to physically separate Graham, Thomas and Hardin, protect all of them from further harm and prevent the fight from escalating into an even more dangerous situation.

     Defendants have demonstrated, based on the evidence presented in support of this motion—including the NJDOC's investigation report, the incident reports prepared by the officers involved and the medical records on the post-altercation examination of Plaintiffs, Hardin and the officers—that Nacca would not have understood his actions to constitute excessive force. In other words, the contours of that right as of the time of the subject incident would not have provided Nacca with fair notice that his actions were unconstitutional. Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014); see also Anderson, 483 U.S. at 640 (holding that a government official is entitled to qualified immunity unless the unlawfulness of his action is "apparent" in light of pre-existing law). The Court again notes that Plaintiffs have proffered no

evidence to refute Defendants' facts or raise a genuine issue as to whether Nacca is entitled to qualified immunity.

For these reasons, summary judgment in favor of Defendant Nacca is warranted based on the qualified immunity defense.

### C. Failure to Protect Claim

Under the Constitution, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994).[1] The Supreme Court has observed that "[i]t is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. To establish their § 1983 claim based on the alleged failure of Ottino and Adams to protect them from violence inflicted by other EJSP-STU residents, Plaintiffs must show the following: (1) that they were in detention "under conditions posing a substantial risk of serious harm;" (2) that Ottino and/or Adams were "deliberately indifferent to that substantial risk to [their] health and safety;" and (3) that this deliberate indifference caused the harm. Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012).

Here, Defendants have carried their burden of showing that there is no genuine issue of fact concerning whether, assuming any risk to Plaintiffs, Ottino and/or Adams were deliberately indifferent to that risk. The record clearly lacks evidence to meet the standard for deliberate indifference. This standard requires that "the prison official-defendant must *actually* have known or been aware of the excessive risk to inmate safety." Id. (quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (2001)). The Third Circuit has stressed that while actual knowledge

---

[1] For imprisoned convicts, this protection is guaranteed by the Eighth Amendment; for individuals not detained upon a criminal conviction, such as Plaintiffs, the right is secured by the due process clause of the Fourteenth Amendment. Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012).

of a substantial risk may be proven by circumstantial evidence, "it is not sufficient that the official should have known of the risk." Id.

According to the proof provided in connection with this motion, Graham and Thomas each submitted only one grievance complaining that Hardin had made threats against them. Graham's grievance was submitted in November 2010 shortly after the group session in which he and Hardin exchanged threats, and Thomas's grievance dates back to December 2010. Graham admitted in his deposition testimony that Hardin made no other threats against him between his November 2010 grievance and the November 14, 2011 altercation. Thomas stated at his deposition that he received many other threats and documented each and every instance. He admitted, however, that he never sent this list to Ottino and Adams. To the extent it could be argued that the constant threats may constitute circumstantial evidence of the Defendants' knowledge of a danger to Thomas, because the risk of harm was so obvious, the Court notes that the assertion made by Thomas at his deposition is uncorroborated, either by other evidence, or by the list he purportedly kept, which has not been produced. His assertion does not create a genuine issue of fact as to Defendants' knowledge and disregard of a substantial risk posed by Hardin, which Defendants have shown the record as a whole fails to support. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586–587 (1986).

Defendants have shown that no reasonable jury could find that Ottino and/or Adams knew that Hardin posed an excessive risk to Plaintiffs' safety and disregarded it, to the detriment of Plaintiffs. Summary judgment on the failure to protect claim is therefore warranted.

14

### III.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment in its entirety. An appropriate Order will be filed.

s/ Stanley R. Chesler<br>
STANLEY R. CHESLER<br>
United States District Judge

Dated: April 13, 2015